## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAURA J., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil No. 3:24-cv-1698(RAR) |
| | : |
| FRANK BISIGNANO, | : |
| Commissioner of Social | : |
| Security, | : |
| | : |
| Defendant | : |

## RULING ON PLAINTIFF'S MOTION TO REVERSE AND/OR REMAND AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Laura J. ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405 (g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated January 9, 2024. Plaintiff timely appealed to this Court. Currently pending are plaintiff's motion for an order reversing or remanding her case for a hearing (Dkt. #20) and defendant's motion to affirm the decision of the Commissioner (Dkt. #26). For the following reasons, plaintiff's motion to reverse, or in the alternative, remand, is DENIED and the Commissioner's motion to affirm is GRANTED.

## Standard

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[1] "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

plaintiff's contrary position. <u>Schauer v. Schweiker</u>, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Williams <em>ex rel.</em> Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." <u>Williams</u>, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform

3

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## Procedural History

Plaintiff initially filed for disability insurance benefits by way of a Title II application, citing alleged disability since August 2, 2021. (R. 10.)[4] Plaintiff's claim was initially denied on May 13, 2022, and upon reconsideration on March 1, 2023. Plaintiff subsequently filed a request for a hearing, which was held on April 8, 2023 by Administrative Law Judge Eskunder Boyd ("ALJ"). (R. 73-98.) Following the hearing, the ALJ issued a written decision denying plaintiff's application on January 9, 2024. (R. 18.) Plaintiff thereafter sought review by

---

his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. §416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to (1) "whether such work exists in the immediate area in which [the claimant] lives;" (2) "whether a specific job vacancy exists for [the claimant];" or (3) "whether [the claimant] would be hired if he applied for work." Id.

[4] The Court cites pages within the administrative record as "R. ___."

the Appeals Council, which was denied on August 23, 2024. (R. 1-
6.) Plaintiff then filed this action on October 23, 2024,
seeking judicial review.

### The ALJ's Decision

After applying the five-step evaluation process, the ALJ
concluded that the plaintiff was not disabled within the meaning
of the Social Security Act from her alleged onset date of August
2, 2021, through the date of Plaintiff's date last insured
("DLI"), June 30, 2022. (R. 18). At step one, the ALJ determined
that plaintiff had not engaged in substantial gainful activity
between her alleged onset date and the DLI. (R. 12.)

At step two, the ALJ found that plaintiff had the following
severe impairments: right knee osteoarthritis, status post right
hip total replacement, and status post left knee replacement.
(R. 13.)

At step three, the ALJ determined that plaintiff's severe
impairments did not meet or medically equal the severity of a
listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1 (20
C.F.R. 404.1520(d), 404.1525 and 404.1526). (R. 13.)
Specifically, the ALJ determined that the plaintiff did not meet
listing 1.18 pertaining to hip impairment. Id. The ALJ noted
that the plaintiff did not meet this listing because she did not
have a documented need for a "walker, bilateral canes, or
bilateral crutches." (Id.)

5

At step four, the ALJ found that through the DLI, plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a). (R. 13.) Except, plaintiff

> has a sit/stand option where she may sit for 30 minutes, alternate to standing position for 2 to 3 minutes, then resume sitting. She may never climb ladders or scaffolds. She can occasionally climb stairs and ramps, balance, stoop, and crouch. She may never kneel or crawl. She may not work where there is exposure to cold temperatures. She may use a cane for ambulation.

(R. 13-14.).

Lastly, at step five, the ALJ concluded that plaintiff was able to perform her past relevant work as an Office Manager. (R. 17.)

## **Discussion**

Plaintiff raises a number of alleged errors in her brief. First, plaintiff argues that the ALJ did not properly evaluate plaintiff's obesity or left hip and right knee conditions in reaching the severity findings at step two of the sequential evaluation process. (Dkt. #20-1 at 2-7.) Second, plaintiff argues that the ALJ's RFC determination is insufficient. (Dkt. #20-1 at 7-15.) Finally, plaintiff argues that the ALJ erred by failing to evaluate plaintiff for a closed period of disability. (Dkt. #20-1 at 15-17.) The Commissioner responds by arguing that any alleged error at step two was harmless error, and further that the ALJ properly evaluated plaintiff's medically

6

determinable impairments and formulated an appropriate RFC.
(Dkt. #26-1 at 11-19.)  Additionally, the Commissioner argues
that the ALJ could not have found a closed period of disability
because the period at issue was too short.  (Dkt. #26-1 at 19-
20.) Based on the following, plaintiff's motion to reverse
and/or remand is DENIED and the defendant's motion to affirm is
GRANTED.

### I.   The ALJ Did Not Err At Step Two

Plaintiff argues in her brief that the ALJ erred at step
two by failing to sufficiently evaluate plaintiff's left hip and
right knee impairments and failing to sufficiently account for
plaintiff's obesity. (Dkt. #20-1 at 3-7.)  Specifically,
plaintiff alleges that the medical evidence shows degeneration
of plaintiff's hips and knees bilaterally to approximately the
same level.  This finding, plaintiff argues, is at odds with the
ALJ only finding the plaintiff's right hip and left knee issues
to be severe impairments at step two. (Dkt. #20-1 at 3.)
Further, plaintiff alleges that the ALJ also erred at step two
in concluding that plaintiff's obesity was a non-severe
impairment. (Dkt. #20-1 at 6-7.)

The Commissioner responds, first, that if an ALJ finds any
impairment severe and finishes the sequential evaluation process
that a finding of another impairment as non-severe is harmless
error. (Dkt. #26-1 at 11-12.) The Commissioner argues that if an

7

ALJ determines there are any severe impairments, then the ALJ is required under the regulations to consider all impairments during the remaining steps, regardless of severity. (Dkt. #26-1 at 12.)

"A claimant has the burden of establishing that she has a 'severe impairment,' which is 'any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work.'" Woodmancy v. Colvin, 577 Fed. Appx. 72, 74 (2d Cir. 2014)(quoting 20 C.F.R. § 416.920(c)) (alterations in original). A mere diagnosis of a disease or impairment is insufficient, the evidence must demonstrate that such impairment is severe. See Rivers v. Astrue, 280 Fed. Appx. 20, 22 (2d Cir. 2008). "Accordingly, a claimant cannot satisfy h[er] light burden to show the severity of an impairment by simply pointing to complaints of pain, a diagnosis, or treatment." Duane N. v. Comm'r of Soc. Sec., No. 3:22-CV-65 (SVN), 2023 WL 2365991, at *4 (D. Conn. March 6, 2023)(citing Howard v. Comm'r of Soc. Sec., 203 F. Supp. 3d 282, 296 (W.D.N.Y. 2016)).

A claimant seeking social security benefits must bear the burden of showing that she has a medically severe impairment or combination of impairments. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). "The severity regulation requires the claimant to show that [s]he has an 'impairment or combination of

8

impairments which significantly limits' 'the abilities and
aptitudes necessary to do most jobs.'" Id. at 146 (quoting 20
C.F.R. §§ 404.1520(c), 404.1521(b)).  It is the plaintiff's
burden to provide "medical evidence which demonstrates the
severity of her condition." Merancy v. Astrue, No. 3:10-cv-
1982(WIG), 2012 WL 3727262, at *7 (D. Conn. May 3, 2012).
Furthermore, Plaintiff must establish disability between her
alleged onset date and her date of last insured. Monette v.
Colvin, 654 Fed. Appx. 516, 517 n.1 (2d Cir. 2016).

"A lack of supporting evidence on a matter for which the
claimant bears the burden of proof, particularly when coupled
with other inconsistent record evidence, can constitute
substantial evidence supporting a denial of benefits." Eusepi
v. Colvin, 595 Fed. Appx. 7, 8 (2d Cir. 2014) (citing Talavera
v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)).

Additionally, where an ALJ errs in determining an
impairment is non-severe, the error is harmless when the ALJ
finds other severe impairments and continues with the analysis.
See O'Connell v. Colvin, 558 Fed. Appx. 63, 65 (2d Cir. 2014);
Reices-Colon v. Astrue, 523 Fed. Appx. 796, 798 (2d Cir. 2013);
Stanton v. Astrue, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010).
"At step two, if the ALJ finds an impairment is severe, 'the
question whether the ALJ characterized any other alleged
impairment as severe or not severe is of little consequence.'"

Lumpkin v. Saul, No. 3:19-CV-01159 (WIG), 2020 WL 897305, at *3 (D. Conn. Feb. 25, 2020)(citing Pompa v. Comm'r of Soc. Sec., 73 Fed. Appx. 801, 803 (6th Cir. 2003).) *See also*, Duane N. v. Comm'r of Soc. Sec., No. 3:22-CV-65 (SVN), 2023 WL 2365991, at *6 (D. Conn. March 6, 2023)(collecting cases)(articulating that "courts in this circuit have found a step two error harmless when the ALJ finds other severe impairments, proceeds through the remaining steps of the disability analysis, and considers the impact of the non-severe impairment in those steps, particularly when calculating the claimant's RFC.").

Plaintiff argues that "there is no possibility that the ALJ abided by the regulations" and properly considered the severity of plaintiff's medically determinable impairments because the ALJ did not consider the plaintiff's non-surgically repaired lower extremity joints. (Dkt. #20-1 at 3.)  The plaintiff then argues that the medical records show similar impairment of the lower extremity joints bilaterally and therefore a similar finding regarding severity is necessary for all four joints (Dkt. #20-1 at 4-6.)

Plaintiff also argues that the ALJ's finding of non-severity of obesity warrants remand. (Dkt. #20-1 at 6.) Plaintiff appears to argue that the ALJ did not sufficiently acknowledge plaintiff's obesity and or the reasons behind his conclusion on severity. (Dkt. #20-1 at 7.)

As mentioned above, the Commissioner generally asserts that at step two, the ALJ's failure to find a condition to be severe, even if erroneous, is of little to no consequence if the ALJ finds any severe impairment. (Dkt. #26-1 at 11-12.)  This is true because the regulations require that an ALJ consider all impartments, severe or not, in the rest of the five-step process.

Further, the Commissioner notes that the ALJ did actually consider the left hip and the right knee of the plaintiff and even discussed medical records and imaging that showed arthritis to all four of the lower extremity joints. (Dkt. #26-1 at 13-14.)  But that the ALJ, while noting reports of pain in the right knee, also found a lack of treatment for the right knee. (Dkt. #26-1 at 14-15, citing R. 15-16.)

Here, the Court notes that the ALJ did find some severe impairments.  Indeed, the ALJ found three of the four lower body extremities to have some type of severe impairment, including the non-surgically repaired right knee. (R. 13.)  Further, contrary to plaintiff's assertion that the ALJ did not provide an indication of why plaintiff's obesity was found non-severe, the ALJ specifically addressed the issue.  The ALJ noted that while the plaintiff does have a BMI indicating obesity, the record "contains little evidence of any quantifiable impact of the [plaintiff's] weight." (R. 13.)  The ALJ also notes that

11

none of plaintiff's primary providers have indicated a more than minimal impact on plaintiff's ability to perform basic work activity. (R. 13.)  The Court notes that an ALJ's "obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities." Battle v. Colvin, No. 13-CV-547-JTC, 2014 WL 5089502, at *5 (W.D.N.Y. Oct. 9, 2014)(citation omitted).

The Court does not find error in the ALJ's determination regarding the severity of plaintiff's lower extremity joints or obesity.  Further discussion of the ALJ's findings related to these conditions will be included below as appropriate to discuss plaintiff's claims regarding the alleged faulty RFC.  In addition, even if there was error, "[a]t step two, if the ALJ finds an impairment is severe, 'the question whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence.'"  Lumpkin v. Saul, No. 3:19-CV-01159 (WIG), 2020 WL 897305, at *3 (D. Conn. Feb. 25, 2020)(citing Pompa v. Comm'r of Soc. Sec., 73 Fed. Appx. 801, 803 (6th Cir. 2003).)  See also, Duane N. v. Comm'r of Soc. Sec., No. 3:22-CV-65 (SVN), 2023 WL 2365991, at *6 (D. Conn. March 6, 2023)(collecting cases)(articulating that "courts in

the Second Circuit have found a step two error harmless when the
ALJ finds other severe impairments, proceeds through the
remaining steps of the disability analysis, and considers the
impact of the non-severe impairment in those steps, particularly
when calculating the claimant's RFC.").

**II.  The ALJ's RFC Determination is Supported by
      Substantial Evidence**

When an individual's impairment does not meet or equal a
listed impairment, the ALJ will "make a finding [of the
individual's] residual functional capacity based on all the
relevant medical and other evidence in [the] case record."  20
C.F.R. § 404.1520(e).  An individual's RFC is the most an
individual can still do despite his or her limitations.  20
C.F.R. § 404.1545(a)(1).  Plaintiff has the burden of
establishing a diminished RFC.  See Butts v. Barnhart, 388 F.3d
377, 383 (2d Cir. 2004).

In formulating an appropriate RFC, an ALJ is required to
review and evaluate the medical records and opinions.  The
regulations provide that the ALJ "will not defer or give any
specific evidentiary weight, including controlling weight, to
any medical opinion(s) or prior administrative medical
finding(s), including those from [the plaintiff's] medical
sources."  20 C.F.R. § 416.1920c(a).  The ALJ will consider any

13

medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" Id. §§ 404.1520c(c), 416.920c(c).  The ALJ must explain how he considered the "supportability" and "consistency" factors in the evaluation, but the ALJ need not explain how he considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical.  20 C.F.R. § 404.1520c(b), 416.920.

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be." Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative finding(s) will be."  Id. §§ 404.1520c(c)(2), 416.920c(c)(2).

14

In the event that the court does not find that the RFC determination was subject to a legal error, the issue will become one of substantial evidence.  "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, [the court] must decide whether substantial evidence supports the ALJ's decision." Bonet v. Colvin, 523 Fed. Appx. 58, 59 (2d Cir. 2013)(summary order). Analogously, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002).

It is well established that "an ALJ is not required to discuss every shred of evidence in the record in reaching a conclusion — rather, the ALJ must articulate how the disability determination is supported by substantial evidence, and provide an explanation that allows for meaningful review on appeal." Vanessa N. v. Comm'r of Soc. Sec., No. 1:23-CV-00913 EAW, 2024 WL 4131242, at *5 (W.D.N.Y. Sept. 9, 2024)(citing Brault v. Comm'r of Soc. Sec., 683 F.3d 444, 448 (2d Cir. 2012)).

In this case, plaintiff asserts that the ALJ failed to properly form the RFC because of overreliance on the opinion of Dr. Adebamiro, which plaintiff contends is impenetrable and vague.  (Dkt. #20-1 at 9-10.)  In addition, plaintiff alleges that the ALJ should have obtained another medical opinion and that the ALJ substituted his own judgment for competent medical

15

evidence.  (Dkt. #20-1 at 10-11.)  Plaintiff appears to further allege that the ALJ erred in evaluating the medical opinion evidence. (Dkt. #20-1 at 14-15.)

The Commissioner responded to this line of argument from Plaintiff by generally asserting that the ALJ properly evaluated the record and the medical opinions in this case.  (Dkt. #26-1 at 13.)  Having done so, the Commissioner argues that the RFC is supported by substantial evidence.

A reviewing court does not "decide the facts anew, nor [] reweigh the facts, nor [] substitute its judgment for the judgment of the ALJ. Rather, the decision of the ALJ must be affirmed if it is based upon substantial evidence even if the evidence would also support a decision for the plaintiff." Bellamy v. Apfel, 110 F. Supp. 2d 81, 87 (D. Conn. 2000). "Indeed, [t]he fact that [plaintiff] does not agree with [the ALJ's] findings, does not show that the ALJ failed to comply with the applicable standards." Gina C. v. Comm'r of Soc. Sec. Admin., No. 3:21CV00423(SALM), 2022 WL 167922, at *10 (D. Conn. Jan. 18, 2022).

The ALJ in this case formulated an RFC finding that the plaintiff was capable of sedentary work, except plaintiff

> has a sit/stand option where she may sit for 30 minutes,
> alternate to standing position for 2 to 3 minutes, then
> resume sitting.  She may never climb ladders or
> scaffolds.  She can occasionally climb stairs and ramps,
> balance, stoop, and crouch.  She may never kneel or

crawl.  She may not work where there is exposure to cold
temperatures.  She may use a cane for ambulation.

(R. 13-14.)

In making this finding the ALJ, as is required, evaluated
the medical evidence and considered all the plaintiff's
complaints and symptoms.  First, the ALJ noted plaintiff's
testimony from the hearing.  Specifically noting that complaints
of severe pain forced plaintiff from work in 2021, that she
experienced swelling in her legs and had knee and hip surgery in
2021. (R. 14.)  Further, the ALJ noted that plaintiff reported
that she could lift five pounds during the relevant time and had
an ability to stand and work for 30 minutes before needing to
sit down since her knee surgery. (R. 14.)  The ALJ explained
that some of the reported symptoms are not supported by the
record.

The ALJ continued with a review of the medical records from
Stamford Hospital and Dr. Robert Henry.  These records show long
standing complaints of right hip pain, and ability to only walk
a block before needing a break.  The ALJ notes x-ray results
showing "severe arthritis at [plaintiff's] bilateral hips and
bilateral knees" with the condition worst at the right hip. (R.
15, citing Ex. 1F at 21, 22, 72-73.)  The ALJ also noted that
the records from Stamford Hospital show that after hip surgery

the plaintiff was doing well and discussed knee arthroplasties with her doctor. (R. 15, citing Ex. 1F at 114-115.)

The ALJ continued his evaluation of the record and discussed plaintiff's treatment with Dr. Henry. The ALJ noted that the plaintiff had right hip improvement following surgery in October 2021, she still required physical therapy but was happy with the outcome. (R. 15, citing Ex. 3F at 2-5.) The ALJ noted that while plaintiff continued to report edema of her lower extremities and pain in her left knee, in December of 2021, the plaintiff was noted to have no edema and was set for surgery on the left knee. (R. 15, citing Ex. 4F at 6 and 8.) Later follow up records from Dr. Henry, cited by the ALJ, indicate that plaintiff's left knee pain was better following surgery, and plaintiff continued physical therapy. (R. 15, citing Ex. 8F at 16.)

The Court pauses here to highlight that the ALJ spent considerable time reviewing and analyzing the records related to all of plaintiff's lower extremities. Contrary to plaintiff's position discussed above, related to an alleged failure at step two or generally ignoring evidence, the ALJ considered the conditions affecting the non-surgically repaired left hip and right knee and considered them in making his RFC. Thus, the step two severity determination is not an error warranting remand. Further, by the nature of the RFC limitations imposed;

that is restricting walking/standing time, allowing for a sit stand option, and use of a cane for ambulation, all of plaintiff's lower body extremity conditions will be aided or addressed to some degree.

Continuing with the review of the record, the ALJ moved on to the records of plaintiff's consultive examination with Dr. Adebamiro in March of 2022.  The ALJ specifically noted findings of trace edema in plaintiff's left lower extremity. An unsteady gait, and the use of a cane.  (R. 15.)  The ALJ also noted plaintiff was able to sit and rise to a standing position without assistance and showed generally normal strength in her upper and lower extremities.  (R. 15, citing 6F at 5-6.)

The ALJ finally noted some of the physical therapy records during the relevant period.  While the ALJ noted some reports of numbness and swelling in May of 2022, the ALJ concluded by noting records from June 2022 which showed decreasing pain and improving range of motion allowing improved squats and the ability to ambulate community distances.  (R. 16, citing 7F at 51, 53, 59, 61, and 63.)

In summarizing the review of the medical record, the ALJ noted that the review places the plaintiff in the scope of Sedentary work.  In other words, the record, showed good upper extremity strength, and improvement post-surgery for both plaintiff's right hip and left knee. (R. 16.) The ALJ then

19

continued to address why certain restrictions placed in the RFC were appropriate due to the treatment records in evidence.

To conclude the review of the medical evidence in forming the RFC, the ALJ analyzed the medical opinion evidence in the record.  The record contained three such opinions, one from state agency consultant Dr. Thommen, one from state agency consultant Dr. McElhinney, and one from Dr. Adebamiro. (R. 99-105, 108-15, and 730-36.)

As to Dr. Thommen, the ALJ concluded the opinion was not persuasive. (R. 17.)  The ALJ noted that the opinion was not fully consistent with the record in its finding of plaintiff's ability to walk or stand for four hours and did not account for cane use during most of the relevant period.  As to Dr. McElhinney, the ALJ found the opinion persuasive. (R. 17.) Specifically, the ALJ noted that the opinion found an ability to stand or walk for 2 hours during a workday, a need for a cane for ambulation, and the ability to lift and carry five pounds. (R. 17.)   The ALJ noted that the opinion is supported by a review of the record and consistent with the treatment records showing use of a cane post hip surgery.  The ALJ also clarified that the lifting restriction of five pounds with the non-cane hand is inconsistent with other records showing upper extremity strength of 5/5. (R. 17.)

Finally, the ALJ determined that the opinion of Dr. Adebamiro was persuasive. (R. 16.)  Following an exam of plaintiff, Dr. Adebamiro opined that plaintiff could stand or walk for 3 hours during an 8-hour day with a cane.  The ALJ noted that this is supported by the findings during the exam and consistent with the other medical records showing improvement after surgery and physical therapy. (R. 16.)

As to plaintiff's complaint regarding Dr. Adebamiro's opinion, specifically that the opinion is too vague, the Court does not agree.  While plaintiff alleges that the notation "3" used when discussing "ability to walk or stand in an 8 hour work day" and "prolonged" when indicating a functional restriction to "avoid prolonged ambulation or standing" are both too vague. (Dkt. #26-1 at 9.)  The Court disagrees.  First, Dr. Adebamiro's use of "3" was clearly a reference to hours in the 8-hour workday, the only unit in use in the sentence.  Plaintiff's allegation that the meaning is unknowable is, therefore, unpersuasive.  As to the alleged confusion regarding "prolonged," plaintiff states "Dr. Adebamiro similarly opined that the Plaintiff could tolerate prolonged ambulation or standing" but she alleges the doctor did not tie this to medical records or explain prolonged.  (Dkt. #20-1 at 9.)  However, Dr. Adebamiro did not state that the plaintiff could tolerate prolonged ambulation or standing.  To the contrary that was

21

listed as a workplace restriction.  That is, the plaintiff
should avoid prolonged ambulation or standing. (R. 735.)  In any
event, the precise contours of "prolonged ambulation or
standing" are not necessary for the ALJ to rely on the opinion.
That precise limitation does not appear to have been placed in
the RFC as written.  Instead, the ALJ provided a sit/stand
option where plaintiff may sit for 30 minutes at a time during
sedentary work.  As plaintiff pointed out, sedentary work should
require standing or walking for about 2 hours in an 8-hour day.
(Dkt. #20-1 at 8.)  Both opinions the ALJ credited as persuasive
opined that the plaintiff could stand/walk for at least two
hours a day.  (R. 112 and 735.)

        As to the medical opinion evidence, the Court finds that
the ALJ properly evaluated the available opinions for
supportability and consistency and that those determinations are
supported by substantial evidence.  Those medical opinions were
based on either a review of the medical record, or an
examination of the plaintiff.  Contrary to plaintiff's argument
otherwise, the ALJ did not craft the RFC out of whole cloth and
the record was not vague and did not contain a gap in need of
additional medical opinions.  The ALJ relied on sufficient
medical evidence[5], including two medical opinions, which assess

---

[5] A significant portion of plaintiff's brief argues about the content
of the physical therapy ("PT") records in evidence.  First, plaintiff

the plaintiff to be functionally able to work sedentary jobs.
The ALJ took those assessments, reviewed the medical treatment
records and concluded that the RFC should include some further
restrictions to fully account for plaintiff's conditions and
alleged symptoms.

As discussed, the Court is satisfied that the ALJ has
considered the medical evidence of record and has created an RFC
that is supported by substantial evidence.  To the extent that

---

argues that the records finding of ability to ambulate community
distances is insufficient for the ALJ to conclude that plaintiff can
walk/stand 2 hours of an 8-hour day. (Dkt. #20-1 at 10-11.)  The Court
notes that the ALJ did mention walking community distances in
evaluating other medical evidence in the record, but did not rely on
it, or solely rely on it, to create the RFC. (R. 17.)  Plaintiff then
contends that the ALJ overlooked important evidence contained in the
PT records regarding unsteady gait, inability to sit for more than 45
minutes without getting up, and requiring a 15 minute break from
sitting every hour.  (Dkt. #20-1 at 12.)  The ALJ accounted for the
unsteady gait with an RFC including the use of a cane for ambulation.
While plaintiff contends there is a need for a cane to stand, a review
of the medical opinion evidence found persuasive by the ALJ states
that the plaintiff needs a cane for ambulation, that plaintiff can
rise and sit without an assistive device and uses a cane as an
assistive device. (R. 112-13 and 733-35.) The ALJ, permissibly,
interpreted these opinions and provided for them with the use of a
cane to ambulate. The Court also notes, an unsteady gait would refer
to a person's manner of walking, therefore plaintiff's unsteady gait
would not be evidence of a need to use a cane while standing. *Gait*,
MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/gait
(last visited Mar. 3, 2026).  The ALJ accounted for plaintiff's need
to get up from sitting and move every 45 minutes with a sit/stand
option at 30-minute intervals.  As for the need for a 15-minute break
every hour, the Court reviewed the PT records but could not locate any
such notation, and the plaintiff has failed to cite to a page in the
record containing this information.  To the extent that plaintiff
contends that the need for a break every 45 minutes equates to the
need for 15-minute breaks every hour, the record does not appear to
support that assertion.  The RFC assessed accounts for many of the
alleged limitations that plaintiff identifies in the PT records, but
the Court also notes that the ALJ clearly considered the PT records
and cited to portions of them in his ruling.

plaintiff has, in portions of her brief, attempted to cast a
wide net of alleged errors, the Court does not agree.  Rather,
it appears that the plaintiff disagrees with the ALJ's
evaluation of the evidence, but that alone does not suffice when
there is substantial evidence to support the ALJ's conclusions.
Remand is not warranted.

**III. Closed Period of Disability**

Plaintiff's final argument relates to the ALJ not
evaluating the plaintiff for a closed period of disability.
(Dkt. #18-1 at 23-24.)  Plaintiff contends that the ALJ should
have considered a closed period because the "medical records
demonstrate that the plaintiff was receiving treatment from
March 2021 to September 28, 2022." (Dkt. #20-1 at 15.)

In this matter, the ALJ was tasked with determining if the
plaintiff was disabled during the period between her AOD of
August 2, 2021 through her DLI of June 30, 2022. (R. 18.)  In
arguing for a closed period of disability, the plaintiff
mentions that the evidence will show treatment from as early as
March 2021 and through September 28, 2022. (Dkt. #20-1 at 15.)
While this period of time is over the required 12 months in
length, that is not the relevant window for the ALJ to consider.
As pointed out by the Commissioner, there was only an 11-month
period at issue in this case.  (Dkt. #26-1 at 20.)

> A closed period of disability refers to when a claimant is found to be disabled for a finite period of time which started and stopped prior to the date of the administrative decision granting disability status. When deciding a disability claim, if a claimant is disabled at any point in time, the ALJ should consider not only whether Plaintiff was disabled at the time of the hearing, but also whether Plaintiff was entitled to disability benefits for any closed, continuous period of not less than 12 months, following the date of [her] claim.

Sandra Lee M. v. Comm'r of Soc. Sec., 541 F. Supp. 3d 277, 283 (W.D.N.Y. 2021)(quotation omitted).

In this case, plaintiff has failed to cite to any medical record prior to the AOD of August 2, 2021 to support the conclusion that any pre-AOD treatment should have been considered by the ALJ in rendering a closed period of disability.  Indeed, the Court agrees with the Commissioner, that any closed period must include a finding of disability that lasts over the required 12-months.  The regulations require a "disability period to last for at least a continuous period of twelve months, and this similarly applies for analysis under a closed period of benefits."  Pettaway v. Colvin, No. 12-CV-2914 NGG, 2014 WL 2526617, at *14 (E.D.N.Y. June 4, 2014.) The time at issue is insufficient to find a closed period of disability. Further, as articulated in this opinion, the Court has not found error in the ALJ's determination that the plaintiff was not disabled and by her DLI of June 30, 2022, which renders a finding of a closed period of disability temporally impossible.

25

## **CONCLUSION**

Based on the foregoing, plaintiff's motion for an order reversing or remanding the Commissioner's decision (Dkt. 18) is DENIED and the Commissioner's motion to affirm that decision (Dkt. 23) is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

It is so ordered this 9th day of March 2026, at Hartford, Connecticut.

/s/
_____

Robert A. Richardson
United States Magistrate Judge